IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02063-PAB-MEH

FLOODGATE, INC., a Colorado Corporation,

    Plaintiff,

v.

OUTSOL, INC., d/b/a Rinsekit, a Delaware Corporation,

    Defendant.

---

# ORDER

---

This matter is before the Court on Defendant Outsol, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 11] pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff responded on August 30, 2019 [Docket No. 25], to which defendant replied. Docket No. 26. The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

## I. BACKGROUND

This case arises out of a contractual dispute between plaintiff Floodgate, Inc., a consulting company that specializes in outdoor recreation products, and defendant Outsol, Inc., a company that sells a pressurized portable shower ("RinseKit"). Docket No. 3 at 4-5, ¶¶ 5-6. Plaintiff is a Colorado corporation with its principal place of business in Colorado. *Id.* at 4, ¶ 1. Defendant is incorporated in Delaware and has its principal place of business in California. *Id.*, ¶ 2.

Plaintiff served essentially as the intermediary between defendant and a factory

in China that manufactured defendant's RinseKits. *Id.* at 6, ¶ 13. Defendant would send purchase orders to plaintiff and plaintiff would issue an invoice to defendant for payment. *Id.*, ¶ 10. After receiving payment, plaintiff would work with the factory, overseeing manufacturing and production of the RinseKits. *Id.*; Docket No. 25-2 at 6, ¶ 22.

At the end of 2014, defendant sought to simplify its manufacturing process and started dealing with the factory directly. Docket No. 25-2 at 7, ¶ 25. However, in March 2015, defendant requested that the parties return to their original payment-routing method, with plaintiff again acting as the intermediary between defendant and the factory. *Id.* at 8, ¶ 31. Plaintiff agreed to this arrangement. *Id.*

Effective January 9, 2014, the parties entered into a non-compete agreement wherein they agreed not to use any advantage that either party could obtain from potentially confidential information shared between the companies. Docket No. 3 at 5, ¶ 7. Specifically, the non-compete agreement states that the parties intend to share "confidential information regarding certain new and useful business opportunities, trade secrets, business entity formation and structuring, and tax planning" and that the receiving party of this confidential information has an obligation to keep that information confidential. *Id.* at 15. The non-compete agreement, however, does not regulate the parties' business relationship beyond the exchange, safekeeping, and non-use of confidential information. *Id.* at 15-18.

On March 20, 2015, plaintiff circulated an announcement to "all interested parties" that the company was relocating back to Colorado after having moved to

California in 2013. Docket No. 25-2 at 7, ¶ 27; at 3, ¶ 7. The announcement advised that all correspondence to plaintiff should be directed to its new Colorado address. *Id.* at 7, ¶ 27. Plaintiff's founder, Eric Specht, sent a personal email to two of defendant's executives informing them of plaintiff's relocation. *Id.*, ¶ 29. According to plaintiff, defendant contacted plaintiff after plaintiff's relocation to Colorado to modify the parties' purchasing and invoicing arrangement. *Id.* at 8, ¶ 31.

Plaintiff claims that, on April 6, 2015, the parties entered into a sales agreement in which plaintiff agreed to provide strategic product-management services for RinseKit. Docket No. 3 at 5, ¶ 8. Defendant argues that it never agreed to this sales agreement. Docket No. 11 at 11. Plaintiff acknowledges that the sales agreement is not signed by defendant, but claims that "it is quite clear" that defendant performed in accordance with the agreement. Docket No. 3 at 5, ¶ 8. Both parties have submitted declarations concerning the sales agreement. *See* Docket Nos. 25-2 and 11-1. Erik Specht, plaintiff's founder, states that defendant performed according to the sales agreement and verbally agreed to the sales agreement. Docket No. 25-2 at 8-9, ¶ 35. Chris Crawford, defendant's CEO, contends that no sales agreement was ever agreed upon and that the first time he saw the sales agreement was when it was attached to plaintiff's complaint. Docket No. 11-1 at 6, ¶¶ 26-27. For purposes of resolving this motion, the Court construes factual disputes in the affidavits in plaintiff's favor and will assume that the sales agreement was executed. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). This sales agreement covered the sourcing and coordination of manufacturing the RinseKit. Docket No. 3 at 5, ¶ 8.

Plaintiff alleges that defendant failed to pay plaintiff what it owed under this agreement. *Id.* at 7, ¶¶ 19-21.

Plaintiff sued defendant in Boulder County District Court, raising two claims of breach of contract, one claim of breach of the covenant of good faith and fair dealing, one claim of unjust enrichment, one claim of tortious interference with a prospective business advantage, and one claim of defamation, libel, or slander. Docket No. 3 at 8-10. Plaintiff also seeks a declaratory judgment that defendant breached the parties' contract. *Id.* at 11. Defendant removed the case to federal court. Docket No. 1. Defendant now seeks dismissal of plaintiff's claims on the basis that the Court lacks personal jurisdiction over defendant. Docket No. 11.

## II. LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether a court has personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). A plaintiff can satisfy its burden by making a prima facie showing. *Dudnikov*, 514 F.3d at 1070. The court will accept the well-pleaded allegations of the complaint as true in determining whether plaintiff has made a prima facie showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). "The allegations of a complaint must be taken as true unless contradicted by the defendant's affidavits, . . . and to the extent that the affidavits contradict allegations in the complaint or opposing affidavits, all disputes must be resolved in the plaintiff's favor." *Iselo Holdings, LLC v. Coonan*, No. 09-cv-02126-MSK-

MJW, 2010 WL 3630125, at *3 (D. Colo. Sept. 10, 2010) (citing *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984)).

## III. ANALYSIS

In establishing whether a federal court has personal jurisdiction over a defendant, "the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. *Shaw v. Vircurex*, No. 18-cv-00067-PAB-SKC, 2019 WL 2636271, at *2 (D. Colo. Feb. 21, 2019). Plaintiff does not argue that the Court has general jurisdiction. Docket No. 25 at 7 n.4. Thus, the Court focuses its inquiry on specific jurisdiction.

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of*

*Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).  The specific jurisdiction analysis is two-fold.  First, the Court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Within this inquiry, the Court must determine whether the defendant purposefully directed its activities at the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted).  Second, if defendant's actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over defendant offends "traditional notions of fair play and substantial justice." *Id.* at 105.  This latter inquiry requires a determination of whether the Court's exercise of personal jurisdiction over the defendant is "reasonable" in light of the circumstances of the case.  *Id.*

Plaintiff argues that defendant has the requisite minimum contacts with Colorado because defendant purposely directed its activities toward a resident of Colorado and the cause of action arises from the consequences of those directed activities.  *See* Docket No. 25 at 9-10.  As an initial matter, whether defendant's actions were directed at a resident of Colorado is not the proper inquiry here.  The Supreme Court has recently emphasized that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  Thus, the Court focuses on

whether defendant purposefully directed its activities at the forum so as to create a substantial connection with the state.

Plaintiff argues that defendant has sufficient minimum contacts with Colorado based upon the sales agreement,[1] defendant's actions in accordance with that agreement, and defendant's delivery of multiple emails, texts, and telephone calls pertaining to the purchase orders. Docket No. 25 at 9. In support of its argument, plaintiff cites *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270 (10th Cir. 2005). In that case, the Tenth Circuit found personal jurisdiction where the defendant had "create[d] continuing relationships and obligations with citizens of [the forum] state." *Id.* at 1277. The court focused on two pertinent factors. First, the court recognized that the defendant had "specifically solicited the contract at issue in [the] case." *Id.* at n.3. Second, the defendant had "exchanged various . . . communications with" the plaintiff, including "numerous faxes, letters, and phone calls." *Id.* at 1277-78. While "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts," the court determined that "such materials provide additional evidence that [the defendant] pursued a continuing business relationship with a [forum state] corporation." *Id.*

Defendant argues that *Pro Axess* is no longer authoritative in light of *Walden* and its clarification that the minimum contacts analysis looks to the defendant's contacts with the forum state rather than with persons who reside there. Docket No. 26 at 8-9.

---

[1] Because the Court resolves factual disputes contained in the parties' affidavits in favor of the plaintiff, *Dudnikov*, 514 F.3d at 1070, the Court construes plaintiff's allegations that it entered into a sales agreement with defendant as true for purposes of this motion.

7

But contrary to defendant's position, *Walden* did not hold that a court may never consider a defendant's transactions or contracts with an in-state plaintiff in its jurisdictional analysis. Indeed, as *Walden* stated, "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." 571 U.S. at 286. What *Walden* clarified is that "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King*, 471 U.S. at 475).

If a contractual relationship with an in-state plaintiff "envision[s] continuing and wide-reaching contacts in the forum State," a court would not be precluded from finding personal jurisdiction simply because such a finding is based primarily on a contract with an in-state plaintiff. *Id.* at 285 (quoting *Burger King*, 471 U.S. at 473).[2] Thus, while the sales agreement alone is insufficient to confer personal jurisdiction, *see Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1254 (D. Colo. 2000) ("The law is clear that a party does not submit itself to personal jurisdiction in a distant forum simply by entering into a contract with a party that resides in that forum."), the Court may consider whether defendant's contractual relationship with plaintiff, and defendant's related activities, create continuing and wide-reaching contacts in Colorado so as to render defendant subject to the state's jurisdiction. *See Sea Eagle Ford v.*

---

[2]Even after *Walden*, the Tenth Circuit has cited and relied upon *Pro Axess* favorably. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 912 (10th Cir. 2017) (comparing case to *Pro Axess* and considering whether the parties' course of dealing constituted the defendant's purposeful direction of activities at forum).

*Texas Quality Well Serv., LLC*, No. 17-cv-02141-PAB-KMT, 2018 WL 4352011, at *3 (D. Colo. Sept. 12, 2018) (considering whether contractual relationship and communications related thereto constituted continuing and wide-reaching contacts with Colorado). "In determining whether [a] contractual relationship shows that defendant purposefully established minimum contacts with the forum, the Court must evaluate the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* (internal quotations omitted).

Construing the facts in the light most favorable to plaintiff and assuming that defendant assented to the parties' sales agreement, defendant performed pursuant to the sales agreement by sending approximately 50 purchase orders to plaintiff in Colorado. Docket No. 25-2 at 8, ¶ 35. The arrangement that the parties had – where defendant would send purchase orders to plaintiff and plaintiff would then act as the intermediary between defendant and the manufacturer – was initiated by defendant after plaintiff had relocated to Colorado. *Id.*, ¶ 31. This business arrangement continued from March 2015 until at least "Fall 2016." *Id.*, ¶ 35; Docket No. 11-1 at 5, ¶ 23. Moreover, the sales agreement notes that plaintiff is a Colorado corporation, Docket No. 3 at 19, and states that the agreement "shall be construed and enforced in accordance with the laws of the State of Colorado. *Id.* at 28, Section 22(H).

Considering the parties' prior negotiations and course of dealing, their future contemplated consequences, the terms of the agreement, the Court finds that plaintiff "has shown some – but not enough – contacts to establish purposeful direction under

the continuing relationships framework." *Old Republic*, 877 F.3d at 914. Defendant's affirmative act of reinstituting plaintiff as its intermediary, after plaintiff had relocated to Colorado, is some evidence of purposeful availment of the privileges of the forum state. *See Pro Axess*, 428 F.3d at 1277 (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1076 (10th Cir. 1995) ("While not conclusive, this solicitation is itself 'some evidence suggesting purposeful availment.'")). Furthermore, the Colorado choice-of-law provision may also be relevant in determining whether a party has purposefully invoked the benefits and protections of the state's laws. *Burger King*, 471 U.S. at 481.

However, the sales agreement creates only minimal obligations for both parties, stating that "[defendant] may issue Orders for products and services to [plaintiff] from time to time," but that "[plaintiff] is not obligated to accept any purchase order issued by [defendant]." Docket No. 3 at 20. The fact that the sales agreement provides plaintiff the opportunity to decline any of defendant's purchase orders weighs against finding wide-reaching and continuous contacts arising from the contractual relationship. *See Old Republic*, 877 F.3d at 911-12 (finding that agreements that create only minimal obligations were insufficient to establish sufficient contacts). And although defendant sent 50 purchase orders to plaintiff in Colorado, these purchase orders and the related communications sent from defendant to plaintiff[3] are insufficient to constitute "wide-reaching" or "continuous" contacts with the forum state. While the number of purchase orders sent is not insignificant, "[t]he mere quantum of contacts between the forum and

---

[3]Plaintiff alleges that defendant sent "multiple emails, texts, and phone calls" to defendant regarding the purchase orders, Docket No. 25 at 9, but provides insufficient information for the Court to determine the volume of these communications.

10

defendant is not determinative. Rather, the quantity of the contacts, their significance to the venture, and the overall purpose of the parties' efforts all factor into an assessment of the sufficiency of the contacts." *G & G Int'l, LLC v. Camsing Co.*, No. 09-cv-00366-MSK-MEH, 2010 WL 466812, at *2 (D. Colo. Feb. 9, 2010). Here, the purchase orders that defendant sent to plaintiff do not impose any Colorado-specific obligations on either party. Rather, the purchase orders are generic form orders, unsigned by defendant, that contain minimal detail and content. *See, e.g.*, Docket No. 3 at 37-51. Ultimately, there is no indication that sending purchase orders to plaintiff was directed in any way at Colorado specifically, rather than directed at where plaintiff happens to be located. *See Camsing*, 2010 WL 466812, at *2 (D. Colo. Feb. 9, 2010) (noting that communications "were directed into Colorado only by the fortuitous fact that [the plaintiff] was located there instead of Maryland" and finding that "such a slim link between the parties' communications and the State of Colorado is precisely the kind of fortuitous and attenuated connection that is insufficient to support the exercise of personal jurisdiction").

Indeed, the mere fact that plaintiff happens to be located in Colorado is insufficient to render defendant subject to Colorado's personal jurisdiction. *See, e.g.*, *Rambo*, 839 F.2d at 1421. In *Rambo*, the plaintiffs entered into an insurance contract with a Georgia-based insurance company and thereafter relocated to Oklahoma. *Id.* at 1416. The plaintiffs sued the defendant insurance company in Oklahoma for breach of the insurance contract. *Id.* In support of their argument that the defendant had sufficient minimum contacts with Oklahoma, the plaintiffs referenced "eight or ten

11

telephone conversations with [the defendant] after [the plaintiffs] moved to Oklahoma." *Id.* While the court recognized that these contacts could, in some cases, provide sufficient contacts for the exercise of personal jurisdiction, it determined that "the exercise of jurisdiction depends on the *nature* of those contacts," *id.* at 1418, and whether those contacts indicated that the defendant had purposefully availed itself of the privileges of conducting activities within Oklahoma. *Id.* at 1419. The court found that the defendant's Oklahoma contacts were fortuitous, resulting only from the fact that the plaintiffs had relocated to Oklahoma. *Id.* at 1420. The court affirmed the district court's finding that it lacked personal jurisdiction over the defendant. *Id.* at 1421.

While *Rambo* is somewhat distinguishable from this case because the parties entered into the sales agreement after plaintiff's relocation to Colorado,[4] it is instructive in that fortuitous or incidental nominal contacts arising from the parties' contractual relationship, simply because one party is located in the forum state, do not necessarily create personal jurisdiction in the forum state. Looking at the nature of defendant's Colorado contacts as a whole, *id.* at 1418, the Court finds that they do not create personal jurisdiction here. The parties' limited contractual relationship is insufficient to create personal jurisdiction, as it does not "envision[] continuing and wide-reaching contacts in the forum State." *Walden*, 571 at 285. "[A] limited relationship with one party does not rise to the level of 'continuing and wide-reaching contacts' with Colorado that can support personal jurisdiction." *Sea Eagle*, 2018 WL 4352011, at *3. And while the sales agreement contained a Colorado choice-of-law provision, this alone is

---

[4] In *Rambo*, the plaintiffs relocated to Oklahoma after the insurance policy was issued and after the claim was filed. 839 F.2d at 1420.

insufficient to create personal jurisdiction. *Burger King*, 471 U.S. at 482; *see also Sea Eagle*, 2018 WL 4352011, at *3 (finding that, despite a Colorado choice-of-law provision, because plaintiff had "introduced no evidence that [the] defendant ha[d] contacts in Colorado other than its contractual relationship with [the] plaintiff," the plaintiff had failed to establish that the defendant had the requisite "continuing and wide-reaching contacts" with the forum state).

The Court finds that, ultimately, plaintiff has failed to demonstrate that through the sales agreement, along with defendant's related actions, defendant created "continuing and wide-reaching" contacts with the forum state. Because there is no connection to Colorado that arises from defendant's contractual relationship with plaintiff other than the fact that plaintiff resides there, the Court finds that plaintiff has not met its burden of establishing that defendant has sufficient minimum contacts with Colorado so as to render it subject to the Court's personal jurisdiction. The Court will grant defendant's motion to dismiss.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant Outsol, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 11] is **GRANTED**. It is further

**ORDERED** that plaintiff's claims are **DISMISSED** without prejudice for lack of personal jurisdiction. It is further

**ORDERED** that, within 14 days of the entry of this order, defendant may have its costs by filing a Bill of Costs with the Clerk of Court. It is further

**ORDERED** that this case is closed.


DATED March 10, 2020.

> BY THE COURT:
>
> _____
> PHILIP A. BRIMMER
> Chief United States District Judge